Good morning, may it please the court. I'm Rick Gauch and I represent Rebecca Loomis. In Danny v. Laidlaw, 165 Washington 2nd, 200 at 226, the Washington Supreme Court stated, The critical inquiry in the four-part test in a wrongful discharge case is not whether the employer's actions contravene public policy, but it is whether the employer fired the employee because the employee took necessary action to comply with public policy. The two public policies that we've identified in this case involve, first, the strong Washington policy of preferring to have competitive bidding in the awarding of state contracts. And the second is the strong federal policy to protect the privacy of driver records. But there's really another policy question inherent in this case, and it's this. Does the tort of wrongful discharge in violation of public policy protect a public employee who, like a good soldier, acts within the system to prevent violations of public policy before they occur? If nothing else, Ms. Loomis learned in her 24 years in the U.S. Army how to be a good soldier. And the story that she tells in this case is of a good soldier who acted to try to prevent violations of public policy, the two that we have identified here. The trial court summarily dismissed Ms. Loomis' claim of wrongful termination. It accepted the Department of Licensing's version of the facts, determined that there was no clear public policy. Although on appeal, the Department of Licensing has conceded that the statutes we pointed to do set forth clear articulations of public policy. But there are questions here unresolved by the trial court. Was it necessary for Ms. Loomis to do what she did to advocate sending out an RFP, to continue to insist on, once the agency had made the decision, we're going to go ahead with the extension? To insist continually on trying to ensure that whatever the contract looked like, it would contain adequate protections for the public. A liquidated damages clause, for example. Similarly, when she saw that someone has asked to pull driver's records, there's a problem with that. The driver's records were in her division. She was responsible for ensuring that they were kept private. I need to check this out. Which she did. Department of Licensing says that, well, these actions weren't necessary. And in fact, there was no public policy violated here. Because the statute we pointed to, regarding competitive bidding, doesn't apply. It doesn't apply because the contracted issue was a sole source personal services contract. And when one looks at the evidence in the form of documents that Ms. Loomis received from the state auditor's office, it becomes clear that, well, this is a practice that the Department of Licensing had engaged in for years. We'll just call this a sole source personal services contract, which takes us out from having to deal with the requirements under the statute, RCW 43-19-1906. But simply calling this contract a sole source personal services contract doesn't make it one. Unless I don't understand the English language, this contract looks like a purchase services contract. A purchase services contract as defined under RCW 39-29-006. This was for continuing routine necessary functions of the agency. Providing driver's licenses. This was not a one-time project. DigiMark L1 was not the only vendor that could provide this service. I'm not sure I understand the thrust of your argument now. The case is about the basis for her termination, I take it. Yes. So you are arguing that she was terminated because of what? That she had, in two ways, had sought to, she acted in service of enforcing the public policies, both public policies. So that, therefore, you are arguing that the employer was violating those policies? No. Well, it did. There's a question whether it did. We believe it did. I'm sorry. Whether they were or not, your argument is she said they were violating them and she got canned as causally as a result, right? That's your argument? Not exactly. I think it's more, Your Honor, that there is a question as to whether those policies were violated and that is something that needs to be determined and was not determined at the trial court. Why does that have to be determined if, taking Judge Gould's point, if someone colorably says you're violating public policy and it may or may not be that they are, but it's at least not a frivolous argument and they then say, well, damn it, you're fired. Wouldn't that be sufficient under your view? I'm not sure that Washington case law supports that, except in limited circumstances when public health and safety are at risk. So if Washington law doesn't support that, how can it support a situation where she makes some murmurings about this but then she goes along with it in the end? Well, I think, Your Honor, that this is the analog here is Mr. Hubbard, who in the Hubbard v. Spokane County case, who tried to persuade his superiors to do what he thought was the right thing. And Ms. Loomis, I mean, it ultimately comes down to whether the policies were violated or they were not. And if they were, then it doesn't, it seems to me, it doesn't really matter whether she was, to use your terminology, making some murmurings about them or it's just whether they were violated. And those are questions that we believe have to be determined here and that they haven't been. Other than in cursory fashion, well, the actions that the agency took were okay. But that doesn't address whether the policy that requires competitive bidding, that we say applies, does apply. Whether the Driver Protection Act, which allows agencies to perform necessary functions, whether this was an agency function, checking to see whether somebody was involved in helping to solicit petition signatures when there was absolutely no reason to believe that anybody was involved in that, is that an agency function? That's a question which was not answered. Well, if that is the case, then the district court concluded that there wasn't any violation of public policy, that they were perfectly authorized to do what they did and that her complaints were not correct. So I'm not quite sure where that leads us. Well, I think that there's a question whether that's correct. That's a correct interpretation of the statute. First off, it seems to me that it's necessary to do more than simply say, well, it was an agency function, that's it. As I said, what is an agency function? There's no definition here. Is this an agency function? The district court didn't even address that. And I'll reserve the rest of my time. How much time do you want to save? Well, I wanted to save five minutes more. Then you better stop. I better stop. Thank you. Thank you so much for your argument thus far. Now we'll hear from the State. Christopher Lanise, am I correct? That's correct, Your Honor. Okay. Good morning. May it please the Court. My name is Christopher Lanise, Assistant Attorney General, and I represent the Washington Department of Licensing. The only claims remaining in this case are two claims for wrongful discharge and violation of public policy, one regarding Washington's competitive bidding laws and another regarding the Driver's Privacy Protection Act. The Washington Supreme Court has been very clear that wrongful discharge is a narrowly construed cause of action with very strict elements. This morning I will focus on the jeopardy element and the fact that Ms. Loomis' conduct was not the only available adequate means for promoting the public policies. If I'm permitting, I will also address Ms. Loomis' failure to establish that the Department violated the law. Ms. Loomis' claims failed as a matter of law on an issue of law that she bore the burden on. This was due to her failure to use existing procedures to protect the public policies that she has identified. This jeopardy analysis does not require any analysis of the facts underlying the reasons for her discharge or the legality of the Department's conduct. Rather, it is an issue of law that turns solely on the adequacy of existing laws that serve to promote the relevant public policies. Ms. Loomis failed to fulfill her burden of establishing the inadequacy of these existing laws because they offer numerous means for promoting the relevant public policies. The State Whistleblower Act served to promote compliance with both Washington's competitive bidding laws and the Driver's Privacy Protection Act. The Whistleblower Act establishes a process for state employees to complain about state conduct that violates federal or state law. The State Auditor's Office then conducts an investigation into those complaints and, if substantiated, refers them to the proper authorities for prosecution or further action. The Act also provides a private cause of action for individuals who are retaliated against for filing a complaint with the Auditor's Office, providing information to the Auditor's Office, or for even being perceived as having filed such a complaint or providing such information. There are also protections unique to Washington's competitive bidding laws. The State Attorney General has statutory authority to enforce compliance with those laws. Washington taxpayers and DigiMark's competitors also had standing to do so. Further, the DigiMark contract amendment in this case had to first be reviewed and approved by Washington's Office of Financial Management before it became effective and was subject to being audited by the State Auditor's Office after the fact. If it had been determined to violate Washington's competitive bidding laws, both the state officer and the contractor who executed the contract would have been subject to fines. There are also protections unique to the Driver's Privacy Protection Act. Individuals who violate it are subject to criminal penalties, states that violate it are subject to substantial fines, and individuals whose information is improperly disclosed have a private cause of action for damages. Okay, so what does this record show as to why she was fired? The record indicates that while Ms. Loomis had some admirable qualities that the department valued, she had significant shortcomings as a manager. Although she was a high-level manager who was an at-will employee and could have been discharged immediately, the department's director, Liz Luce, decided instead to try to help her. She praised her with respect to the qualities that she valued, but also spoke to her about the concerns she had about her interpersonal skills. She hired a management coach. The first time around, Ms. Loomis threatened to quit because she was offended by the offer. The second time around, it was not an offer. It was an instruction that she utilize the management coach. Unfortunately, at the end, either because after nine months or more of trying to help Ms. Loomis improve her managerial skills, she was either unable or unwilling to improve those skills. Director Luce finally decided to discharge her as a result. But again, the reasons for her discharge are immaterial under this jeopardy analysis, which is an issue of law that Ms. Loomis bore the burden on and failed to fulfill. It is undisputed that Ms. Loomis failed to use any of the existing procedures for enforcing compliance with the laws she has identified. Nor has she satisfied her burden of proving that all of these procedures failed as a matter of law. Nor could she, given that the Washington Court of Appeals and Blumhoff v. Tukwila School District held that the local government whistleblower act, which provides substantially fewer protections than the state whistleblower act, was adequate as a matter of law under this analysis. Mr. Gauci referred to the fact that employees should be encouraged to complain internally to try to prevent conduct from occurring before the fact. But in Blumhoff v. Tukwila School District, the exact same thing happened. The plaintiff in that case complained internally, trying to prevent what she believed were violations of disability laws concerning students. But she failed to meet the statutory definition of a whistleblower and thus did not have the protection of this local government whistleblower act. Despite the lack of the availability of those remedies, and despite the fact that she complained internally to try to prevent those conducts, the Court of Appeals held as a matter of law that the whistleblower act, as it pertained to local government employees, was adequate, thus precluding that plaintiff from establishing the jeopardy element of her claims as a matter of law. Counsel, can I clarify? Are you saying that if the jeopardy element is not satisfied, that the summary judgment should be affirmed, and that's without respect to whether she was fired for being a bad manager or she was a great manager? That's correct, Judge Gould. The jeopardy element is one of the four required elements any plaintiff bringing a wrongful discharge claim in Washington must fulfill. A failure on any one of the required elements would require affirming the district court's dismissal. And the district court, in part, relied on the jeopardy element? The district court was not explicit in relying upon the jeopardy element in its decision. It was explicit with respect to the other three elements of the claim, but did not refer to the jeopardy element. That was my recollection, that I thought the district court was more focused on whether there was a causal connection between the termination and her complaints. That's correct, but this court can't affirm on any grounds supported by the record, and the jeopardy element in this case is an issue of law that doesn't require consideration of any other facts. So are you saying that the rest of the grounds are invalid? I'm not saying the rest of the grounds are invalid. I am merely focusing on the jeopardy element in this argument this morning because it is the cleanest in it as a matter of law. As indicated in our briefing, there were numerous grounds for affirming the trial court, some of which involve consideration of lengthy facts, as indicated in our briefing. But the jeopardy element requires consideration of none of these facts. Even if the department had violated the law, even if her complaints were the reason for her discharge, because she fails to satisfy the jeopardy element, she would still fail as a matter of law in her claims. That is, the termination would not jeopardize the public policy? That's correct. Because there are other ways to implement the policy. Exactly. And this case is exactly the same as Cudney v. Alsko, where the Washington Supreme Court held that the plaintiff was unable to meet the jeopardy element as a matter of law because he complained about his co-workers drunk driving to his supervisor rather than calling the police. In that case, the court held that, quote, the statutory system in place is adequate to promote the public policy. Cudney's problem here is that he acted outside of it. The same is true here, precludes Ms. Loomis from establishing the jeopardy element of her claims as a matter of law. So today you're telling us you think this is the cleanest and least factually oriented? It is certainly the least factually oriented. And you're not waiving the other grounds in your brief? Absolutely not, Your Honor. And I will, as I have time now, also address one of the additional grounds, Ms. Loomis's failure to establish that the Department violated the law, which she was required to do to survive summary judgment. She contends that the Department violated RC. Is that kind of related to the jeopardy argument in a sense? The jeopardy element is one of the four fundamental elements of a wrongful discharge claim. The argument I was just discussing previously you may describe as the adequacy argument. They're what you might call sub-elements of the jeopardy element, but both of which are required elements to satisfy the jeopardy element for a wrongful discharge claim. Ms. Loomis contends that the Department violated RCW 43-19-1906 by not putting the Digimart contract out to bid, but that contract by its express terms only applies to contracts that are executed by or through authority delegated by Washington's Department of General Administration. There is no evidence in this case, in fact it is undisputed, that the Department of General Administration had nothing to do with the Digimart contract in this case. Further, when Ms. Loomis filed a whistleblower complaint with the auditor's office after she was discharged, the auditor examined Ms. Loomis's concerns under RCW 43-19-1906 and determined that she was wrong. All that was required was for the Washington Office of Financial Management to review and approve the amendment before it became effective, and it is undisputed that that did occur in this case. Further, Ms. Loomis contends that the Department violated the Driver's Privacy Protection Act by reviewing driver data to confirm that Department employees had not violated state ethics laws. It is undisputed that reviewing such data for such a purpose is not a violation of the law. While Ms. Loomis questions whether this was the actual reason the data was reviewed, she fails to even suggest, much less provide any evidence of, some alternative improper purpose. The only evidence in this case conclusively demonstrates that the Department simply reviewed Department data for Department purposes, and that is not a violation of the law. In short, Ms. Loomis failed to provide any evidence that the Department violated the law, and even if she had, her conduct was not the only available adequate means for promoting the relevant public policies. For these reasons, and the additional reasons stated in our briefing... Just so I'm clear on this, does she have to show that there was an actual violation of the law, or does she have to show that there was a violation of the policy of the law? The Court of Appeals in Bott v. Rockwell in 1996 held that this claim, quote, fails if the employer acted within the law, close quote. The Supreme Court subsequently decided not to overturn that precedent, except for in cases involving immediate threat to life or limb,  which this Court recognized as the relevant guidance regarding that issue in Masuko v. Group Health in its 2007 decision. So we would posit that you do need a violation of the law in cases not involving immediate threat to life or limb. And even if it were expanded to include a violation of the relevant policy, the policy regarding competitive bidding in these cases involves, as demonstrated by RCW 3929, some discretion with respect to the Office of Financial Management making determinations as to whether or not all public contracts must be let out to bid. And that element of discretion was not violated in this case. If there are no other questions, for these reasons and the additional reasons stated in our briefing, the Department respectfully requests that the District Court be affirmed. Thank you. Okay. I have no questions. Hearing none, I think the State can rest. Now, Mr. Gauci, do you have some time left? Thank you, Your Honor. I'm going to address a few things here that opposing counsel raised. First off, this Blomhoff case, if I understand correctly, I've checked this several times and I keep seeing an indication this is an unpublished decision, which I believe is not appropriate to cite for any precedential value. Second, Mr. Linnies refers to Cudney. This is like Cudney, but Mr. Cudney did. Footnote four in Cudney, I suggest, really applies to this case. If Mr. Cudney had been acting in service of enforcing the public policy, this might be a different case, but he acted outside. If he had been a police officer, for example, and precinct captain came in one night and Mr. Cudney came to the conclusion that the captain appears to be intoxicated and is leaving and looks like he's going to get into a car, well, he would be acting in service of enforcing the policy as a police officer if he had tried to do something about it. Ms. Loomis is not somebody who was acting outside of the system. She was acting inside, trying to, again, prevent violation of public policy. If I could ask you a question on that. Does that argument relate to Mr. Linnies' argument that there's no satisfaction of the jeopardy element? It does relate to the jeopardy element. Was her conduct necessary to enforce the policy and to, I believe Judge Rakoff's question, the case law seems to be pretty clear that it's either a provision of a statute or the purpose of a statute that's involved. And the purpose of the statute is, the one regarding competitive bidding is to see to it that competitive bids are involved in the awarding of state contracts with limited exceptions. And again, we're back to, in fact, Mr. Linnies' argument, which is, well, again, this statute didn't apply because it was a sole source personal services contract. As I said before, calling it a sole source personal services contract doesn't make it work. This, once again, appears to be an instance of an agency doing things in a particular way because it had always done them that way. And here's Ms. Loomis who's saying, no, we can't do it that way. We have time to send out an RFP. There are other potential vendors. Everybody knows that. No, we're going ahead. Call it a sole source personal services contract. Limited oversight by OFM. That takes care of it. As I indicated before, without people like Ms. Loomis who are willing to work within the system to raise questions about traditional practices, it's hard for me to imagine that there's any external mechanism that in fact would adequately protect the public policy or adequately protect against discouraging the necessary action that she took. And finally, as I mentioned before, and we've mentioned in the briefs, Your Honors, that there are all kinds of questions that are material to this case that were not addressed at the trial court. And for that reason, we request that this court reverse and order a trial to resolve those questions. Thank you. Thank you very much. Both counsel are commended on their arguments. We have great counsel in Washington, too. This case is submitted.
judges: Rakoff, Schroeder, Gould